## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Elizabeth Suriano, individually and on behalf of all others similarly situated, | 1:21-cv-00717 |
| Plaintiff, | |
| - against - | First Amended Class Action Complaint |
| Nestlé USA, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Nestlé USA, Inc. ("defendant") manufactures, markets, labels and sells non-dairy – almondmilk and oatmilk –  coffee creamers under its Coffee-mate, Natural Bliss brand, purporting to be "all natural" and flavored mostly or exclusively by the natural flavor of vanilla ("Products").

2.     The common front label representations include (1) "All Natural," (2) "Vanilla – Natural Flavor," (3) "Natural Bliss," (4) "Plant Based," (5) "No GMO Ingredients," (6) three cured vanilla beans and a vanilla flower (almondmilk) and (7) "Creamer."




3. The differences in the front labels include (1) the main component of the creamers – almonds or oats, (2) the vanilla flower on the Almondmilk Creamer and (3) the fresh oats on the Oatmilk Creamer.

4. The back panels of the Products states, "OUR NATURAL *VANILLA* FLAVOR INCLUDES EXTRACTS FROM REAL BEANS FROM MADAGASCAR."



## I. NATURAL VANILLA FLAVOR

5. Natural vanilla flavor starts with the vanilla orchid, grown in tropical climates such as Madagascar.



6. The vanilla flower produces green vanilla beans.



7.     The beans develop their unique flavor from being cured in the tropical sun.



8.     The flavoring principles of vanilla beans are removed through immersion in alcohol.

Beginning                          Middle                          End



9.     The color of the alcohol gradually changes to reflect the release of the millions of black seeds inside the vanilla beans, which contain the flavoring compounds.

4



10.     While vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla, it only contributes about one-third of its flavor and aroma.

11.     The chemical production of vanillin in the late 19th century resulted in foods purporting to contain natural vanilla, but that contained no vanilla or a trace amount, boosted by low cost, synthetic vanillin.

12.     The bulk of natural vanilla's flavor is from more than two hundred odor-active compounds, including acids, ethers, alcohols, acetals, heterocyclics, phenolics, esters and carbonyls.

13.     These non-vanillin compounds are essential to what consumers expect from vanilla and are only provided together in the extracts of vanilla beans.

14.     Methyl cinnamate and cinnamyl alcohol provide a cinnamon and creamy note.

15.     Acetovanillone provides a sweet, honey taste.

16.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

17.     4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral notes.

5

## II.    CONSUMERS SEEK NATURAL FOODS

18.    Demand for natural vanilla has been steadily increasing due to consumer demand for natural ingredients.

19.    In 2015, sales of natural products grew 9.5% to $180 billion.[1]

20.    Consumers value natural products for reasons including the belief they are safer and healthier than products that contain synthetic and chemical ingredients, which are associated with detrimental health effects.[2]

21.    Demand for natural vanilla has been steadily increasing due to consumer demand for natural ingredients.

22.    Seventy percent of consumers avoid artificial flavors, made through harsh processing and synthetic ingredients, because they are linked to detrimental health and environmental effects.

23.    Consumers are accustomed to truthful labeling across to tell them whether a product's vanilla taste is from natural vanilla beans or is artificial.

24.    Illinois and the Food and Drug Administration ("FDA") have identical requirements for disclosing whether a product's taste is from the vanilla plant or from non-vanilla, synthetic sources. See 21 C.F.R. § 101.22(i).

25.    For example, other "vanilla" coffee creamers with pictures of natural vanilla beans and flowers truthfully disclose they are "Artificially Flavored."[3] See 21 C.F.R. § 101.22(i)(2).

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www. investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp
[2] Julianna M. Butler and Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017). "Thus, one finding is that most people – 87% of our sample – do appear to attribute meaning to "natural" labelling." *Id.*
[3] "French Vanilla" is another term used to describe "Madagascar Vanilla," because this island was once a French colony.



26.    The average price of the artificially flavored vanilla coffee creamers is $2.49 per 16

OZ[4], a substantial amount less than the average price of defendant's Products, $4.29 per 16 OZ.

27.    Defendant's Products are seventy-two percent more expensive than the artificially

flavored vanilla coffee creamers, even though both contain artificial vanilla flavor and little, if any,

natural flavor from vanilla.[5]

## III.   THE "NATURAL VANILLA" REPRESENTATIONS ARE MISLEADING

28.    Consumers who view the front label will expect that the predominant or exclusive

source of the Product's vanilla taste will be the natural flavor of vanilla, because the label says this

– "VANILLA – NATURAL FLAVOR" – and has pictures of vanilla beans.

29.    This back label of the Products further confirms this, through pictures of coffee with

added creamer, between vanilla beans and a vanilla flower, and three whole almonds (almondmilk)

---

[4] The 16 oz cost is based on calculation per ounce, given that Defendant's Products are sold in sizes including 16 and 32 oz.
[5] Defendant's Products cost $ 0.1125 more per ounce. This is 72.3 percent more than the per ounce cost of competitors.

and vanilla beans and oats (oatmilk).





30.    The back labels also emphasize that the Products are made with "Natural Vanilla Flavor" and contains "Extracts From Real Beans From Madagascar."



31. Should consumers scrutinize the ingredient lists, they will see only "Natural Flavor."

**Almondmilk Creamer**

**INGREDIENTS:** ALMOND MILK (WATER, ALMONDS), CANE SUGAR, COCONUT OIL, PEA PROTEIN, BAKING SODA, NATURAL FLAVOR, SEA SALT, GELLAN GUM, GUAR GUM (FROM THE GUAR PLANT).

**Oatmilk Creamer**

**INGREDIENTS:** OAT MILK (WATER, OAT FLOUR), CANE SUGAR, COCONUT OIL, PEA PROTEIN, BAKING SODA, NATURAL FLAVOR, GELLAN GUM.

32. However, consumers cannot know from the ingredient list that the Products contain no appreciable or detectable amount of natural vanilla, and is flavored almost exclusively by artificial flavor.

33. That the "Natural Flavor" consists of little, if any "Extracts From Real Beans From Madagascar" or "Natural Vanilla Flavor," and is mainly artificial, is based on several facts.

34. First, according to Scott Rankin, a professor of dairy foods at the University of Wisconsin-Madison, "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."

9

35. For instance, "Natural flavor…(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association" with vanilla.

36. The back label tacitly concedes that the "NATURAL [*VANILLA*] FLAVOR *INCLUDES* EXTRACTS FROM REAL BEANS FROM MADAGASCAR," but fails to disclose this amount is de minimis or negligible. (emphasis added).

37. By stating that the "Natural Flavor" *includes* vanilla, it concedes that this ingredient contains non-vanilla flavors.

38. While this information may be known to food labeling experts such as Dr. Rankin, it is not known to reasonable consumers, including Plaintiff.

39. Consumers are not told that though the "Natural Flavor" may contain some natural vanilla, the vanilla taste is mostly from artificial flavor.

40. The representations are misleading because the labels emphasize the "Natural Vanilla Flavor" but fail to disclose the non-vanilla flavoring, and that the amount of vanilla is *de minimis*.

41. Second, analytical testing of the Product in 2020 and 2021 confirmed that the Product's "vanilla" taste is not from natural vanilla but artificial flavor.

42. In isolating key natural vanilla flavor compounds, the amount of vanillin was disproportionately greater than if it was present only from "natural vanilla flavor" or "extracts from real beans from Madagascar."

43. In isolating key natural vanilla compounds, the amount of vanillin was disproportionately greater than if it was present only from the natural flavor of vanilla.

44. The vanillin was unaccompanied by expected amounts of key aromatic compounds

– methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and/or 4-methoxybenzyl alcohol (p-anisyl alcohol).

45. Third, guaiacol was detected at atypically elevated levels, not explained by relation to any other compounds.

46. Guaiacol is the source of 85% of artificial vanillin.

47. The detection of guaiacol is considered a "fingerprint" of artificial vanilla.[6]

48. Guaiacol is a petrochemical precursor, obtained from synthetic benzene and propylene, whose industrial source is petroleum.

49. Guaiacol is converted to vanillin through chemical reactions, condensation with glyoxylic acid, decarboxylation and the use of chemical catalysts, including sodium hydroxide and sodium chloride.

50. Vanillin made from guaiacol is an artificial flavor because guaiacol is an artificial source – petroleum products – and is made through non-natural processes. *See* 21 C.F.R. § 101.22(a)(1).

51. The ingredient lists are misleading, because Defendant is required to identify this flavoring by its specific name, "vanillin" or "artificial flavor."

52. The Product contains other artificial flavors, such as piperonal (heliotropine). *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

53. Piperonal is not found in vanilla and is used to contribute a "powdery" note.

54. The piperonal used is from an artificial source, as it was detected at levels several times higher than if a natural source was used.

---

[6] A.G. Huesgen, Analysis of natural and artificial vanilla preparations, Agilent Technologies, Inc.

55.     Artificial piperonal is made from benzene, a byproduct of petroleum processing, and a highly toxic carcinogen that causes leukemia.

## IV.    THE "NATURAL" REPRESENTATIONS ARE MISLEADING

56.     The front label emphasizes the Products' "natural" attributes through the statements, "Vanilla – Natural Flavor," "Natural Bliss," "All-Natural Coffee Creamer," and "All Natural" (the "Natural Representations").

57.     The Natural Representations appear four times on the front labels, compared to what the Products are primarily used as – "coffee creamer" – which appears once.

### A.    Consumers Seek Natural Products

58.     Consumers have become increasingly concerned about effects of synthetic and chemical ingredients in foods.[7]

59.     Consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.

60.     In 2015, sales of natural products grew 9.5% to $180 billion.[8]

61.     Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

---

[7] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017). "Thus, one finding is that most people – 87% of our sample – do appear to attribute meaning to 'natural' labelling. The vast majority of respondents stated a belief that "natural" signals no artificial flavors, colors and/or preservatives." *Id.*

[8] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6 ; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025).

62. Federal agencies have warned companies that they must ensure that they can substantiate "natural" claims.

63. Federal agencies have issued guidance on the term "natural" so that companies will not use this term to mislead consumers.

64. The FDA defines "natural" to mean nothing artificial or synthetic has been included in or added to a food that is not expected.

65. The Federal Trade Commission ("FTC") advises that companies must anticipate how reasonable consumers will understand the word "natural."

66. If "reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact."[9]

67. Surveys show that "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial [or synthetic] ingredients."[10]

B. The Natural Representations Tell Consumers the Flavoring is From Natural Vanilla

68. Consumers viewing the "Natural Representations" – "Vanilla – Natural Flavor," "Natural Bliss," "All-Natural Coffee Creamer," "Natural Vanilla Flavor," "All Natural," and pictures of vanilla beans and flowers – will expect all or most of the Products' vanilla taste is from extracts from vanilla beans.

69. However, the vanilla taste is admittedly not all or even mostly from natural vanilla extracts.

70. In correspondence with vanilla flavor companies, the FDA cautioned that the word "natural" has additional meaning to consumers when used to describe products with a

---

[9] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).
[10] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010) and on FTC website, Comment 58.

characterizing flavor of vanilla.

71.    Specifically, when consumers see a product with a characterizing flavor of vanilla described as "[all] natural," they will expect all the flavoring to be a natural vanilla flavor." See Exhibit A, Letter from Margaret-Hanna Emerick, FDA, to Richard Brownell, February 25, 2016.

72.    The FDA offered guidance, stating that:

the term 'natural flavor' must not be used in such a way to imply that it is a 'natural vanilla flavor', because it is not derived from vanilla beans.

Furthermore, if the flavoring ingredient is being used in another food as 'vanilla flavoring' and the flavoring was not derived from vanilla, and if the characterizing flavor of the food is vanilla, then the food must be identified as 'artificially flavored' as stated in 21 CFR 101.22(i)(1)(ii).

FDA Letter, February 25, 2016.

73.    Even if the "NATURAL FLAVORS" ingredients contain vanilla flavor from non-synthetic, yet non-vanilla sources, the representations are still misleading because the only natural vanilla flavor – and natural vanillin – is from vanilla beans.

C.    The Product's Flavoring is from Synthetic Sources

74.    The Product's flavoring is not from non-vanilla, non-synthetic sources, but from artificial petrochemical sources.

75.    Although the flavoring used to simulate the Product's characterizing vanilla flavor is (1) not all or mainly from natural vanilla, (2) from artificial petrochemical sources and (3) made through artificial processes, Defendant pretends otherwise, conflating natural and artificial flavoring and deceiving consumers.

76.    Consumers at the point-of-sale are unable to verify Defendant's claims that its Products are mainly or exclusively flavored by natural vanilla.

77.    Because the Product contains artificial flavor from synthetic materials – vanillin and

piperonal – that "simulates, resembles or reinforces the characterizing [vanilla] flavor," the front label is required to, but omits, that it is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

78.    Defendant knows consumers will pay more for the Product because its representations include pictures of vanilla, "Vanilla," "All Natural," and omits that it is artificially flavored.

79.    The Product lacks an authentic vanilla taste because of the absence of the critical odor-active compounds in vanilla.

80.    The added vanillin, from an artificial source, gives the Product a "sweet, creamy" taste, which is distinct from the multifaceted taste of the natural flavor of vanilla.

81.    The addition of more natural vanilla flavor to the Product in place of artificial flavor would cost approximately $ 0.07 per 16 oz, a *de minimis* increase in cost, especially considered the premium price of the Product compared to similar products.

D.  The Products Contain Other Non-Natural Ingredients

82.    The Products contain other ingredients – gellan gum (both) and guar gum (almondmilk creamer) – that consumers would not expect to find in products labeled "all natural."

83.    The FDA and FTC cautioned companies to consider consumer expectations when using the term "natural."

84.    No reasonable consumer will expect gellan and guar gum in products which are basic, non-dairy coffee creamers, which purport to contain an appreciable amount of natural vanilla.

## V.    CONCLUSION

85.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives.

86.    The value of the Products that plaintiff purchased was materially less than their value as represented by defendant.

87.    Defendant sold more of the Products and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

88.    Had Plaintiff and proposed class members known the truth, they would not have bought the Products or would have paid less for them.

89.    The Products are sold for a price premium compared to other similar products, an $4.29 per 16 OZ, higher prices than they would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

90.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

91.    Upon information and belief, the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

92.    Plaintiff Elizabeth Suriano is a citizen of Illinois.

93.    Defendant Nestlé USA, Inc. is a Delaware corporation with a principal place of business in Arlington, Arlington County, Virginia

94.    The parties are citizens of different states.

95.    Venue is proper because plaintiff resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

Parties

96.   Plaintiff Elizabeth Suriano is a citizen of Elmhurst, DuPage County, Illinois.

97.   Defendant Nestlé USA, Inc., is a Delaware corporation with a principal place of business in Arlington, Virginia, Arlington County.

98.   Defendant is the largest food company in the world.

99.   In or around 2017, Defendant announced it would shortly eliminate "artificial flavors" from its Products, because it knew consumers avoided artificial flavors.

100.   Plaintiff bought the Products on one or more occasions within the statute of limitations for each cause of action alleged, from one or more locations, including between August 2020 and October 2020, from Jewel-Osco, 153 Schiller St Elmhurst, IL 60126.

101.   Plaintiff bought the Products at or exceeding the above-referenced prices.

102.   Plaintiff relied on the representations identified here.

103.   Plaintiff sought to purchase products with a materially greater amount of vanilla ingredients than were present.

104.   Plaintiff expected that most or all the vanilla taste would be from real vanilla, which is depicted on the front label.

105.   Plaintiff did not expect the vanilla taste to be provided mostly, or all, by non-vanilla sources.

106.   Plaintiff did not expect the Products to contain flavoring from synthetic, artificial sources.

107.   Plaintiff did not expect ingredients such as gellan gum and guar gum in products labeled as "all natural."

108.   Plaintiff is a layperson and not a food scientist or regulatory specialist.

109. Plaintiff did not scrutinize the ingredient lists.

110. Even if Plaintiff did scrutinize the ingredient lists, she did not know nor could be expected to know, that "Natural Flavors" did not refer to the natural vanilla flavor touted on the labeling.

111. Plaintiff did not, nor could be expected to know, that "Natural Flavors" is a technical term for a flavoring ingredient which contained a negligible amount of vanilla and mainly concentrated and synthesized flavor compounds from synthetic sources and non-vanilla sources.

112. Plaintiff expected more than a vanilla taste, but the other health benefits which are conferred through consumption of vanilla ingredients.[11]

113. Plaintiff would not have purchased the Products if she knew the representations were false and misleading.

114. Plaintiff chose between Defendant's Products and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

115. The Products were worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

116. Plaintiff intends to, seeks to, and will purchase the Products again when she can do so with the assurance that Products' representations are consistent with its composition.

<u>Class Allegations</u>

117. The class will consist of all Illinois residents who purchased the Products during the statutes of limitations for each cause of action alleged.

118. Common questions of law or fact predominate and include whether defendant's

---

[11] Keith W. Singletary, "Vanilla: potential health benefits." Nutrition Today 55.4 (2020): 186-196.

representations were and are misleading and if plaintiff and class members are entitled to damages.

119.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

120.   Plaintiff is an adequate representative because her interests do not conflict with other members.

121.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

122.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

123.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

124.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

125.   Plaintiff incorporates by reference all preceding paragraphs.

126.   Plaintiff and class members desired to purchase non-dairy coffee creamers which contained a non-negligible amount of extracts from vanilla beans, most or all the flavoring was from natural vanilla, contained only natural ingredients and did not contain synthetic ingredients and flavors.

127.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

128.   Defendant misrepresented the Products through statements, omissions, ambiguities, half-truths and/or actions.

129. Plaintiff relied on the representations.

130. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,<br>Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq.</em>

131. The Products were manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained a non-negligible amount of extracts from vanilla beans, most or all the flavoring was from natural vanilla, contained only natural ingredients and did not contain synthetic ingredients and flavors.

132. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

133. This duty is based on Defendant's outsized role in the market for these type of Products.

134. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

135. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

136. The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

137. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

138. Defendant had a duty to truthfully represent the Products, which it breached.

20

139. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

140. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

141. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Products.

142. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Fraud

143. Defendant misrepresented and/or omitted the attributes and qualities of the Products, that they contained a non-negligible amount of extracts from vanilla beans, most or all the flavoring was from natural vanilla, contained only natural ingredients and did not contain synthetic ingredients and flavors

144. Defendant's fraudulent intent is evinced by its knowledge that the Products were not consistent with their representations.

Unjust Enrichment

145. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the

21

undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 18, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com